Russell L. BENTLEY, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 89–70.

United States Court of Veterans Appeals.

Argued July 26, 1990.

Decided Sept. 13, 1990.

Rick Surratt (non-attorney practitioner), for appellant.

Stephen A. Bergquist, with whom Raoul L. Carroll, Gen. Counsel, Andrew J. Mullen, then Acting Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Associate Judges.

KRAMER, Associate Judge:

## SUMMARY

This case involves an appeal by Russell L. Bentley (veteran) from a decision by the Board of Veterans' Appeals (BVA) which concluded that the rating actions of February 24 and April 25, 1960, were not clearly and unmistakably erroneous in failing to assign ratings of 60 percent rather than 40 percent for traumatic arteriovenous aneurysm under 38 C.F.R. § 4.104 (1989), Diagnostic Code 7113.

We conclude that, as a matter of law, there was clear and unmistakable error in not awarding a 60–percent rating on February 24, 1960 and that, as a consequence, a 40–percent rating could not have properly been assigned on April 25, 1960 without notifying the veteran of a reduction in rating with opportunity to respond. The decision of the BVA is reversed and the case remanded to it for further proceedings consistent with this opinion.

## HISTORY

The veteran was in active service in the Armed Forces from March 1942 to October 1945. While serving aboard the U.S.S. S–13, a Navy submarine, he slipped on a wet deck in April 1944, fracturing his right elbow and dislocating the bones in his right arm. He underwent treatment for these conditions and upon discharge in October 1945 had residual limitation of motion.

By VA rating board action of November 1945, the veteran was awarded a 10–percent service-connected disability for residuals of a healed fracture of the right arm. In August and September 1947, the veteran received hospital care from the Veterans' Administration (VA) for further right arm injury incurred while lifting a heavy object at work. Thereafter, he lost most of the use of the forearm, and elbow motion was about 50 percent of normal. Although there were significant physical symptoms, it was concluded by the VA, after orthopedic and neurosurgical consultations, that such symptoms were not of an organic basis. The veteran was discharged with a diagnosis of bone malunion due to right arm fracture.

A statement of October 1947 from J.R. Briscoe, M.D., a private physician, concluded that the veteran had nerve damage as a result of the right arm injury.

The veteran underwent further examinations at a VA hospital in November 1947. After psychiatric and neurologic evaluation, it was concluded that the neurological findings were most consistent with hysteria, and a diagnosis of conversion reaction manifested by complete paralysis of the right arm was made.

The case was reviewed by a VA rating board in January 1948, and a 70–percent rating was assigned for paralysis of the right upper arm with conversion reaction, residuals of old bone fracture, and traumatic arthritis of the right elbow.

Following another VA hospitalization from April 26 to May 25, 1948, during which the veteran underwent diagnostic testing, a VA regional office in January 1949 reduced the rating from 70 percent to 50 percent.

In a statement dated July 7, 1959, E.H. Schaper, M.D., a private physician, related that a recent examination revealed an arteriovenous aneurysm requiring surgical correction and evidence of hypertensive cardiovascular disease.

In a letter dated July 27, 1959, Dr. Briscoe stated his opinion that the veteran had had a post-traumatic aneurysm of the brachial artery since the time of his discharge from the service.

In August–September 1959, the veteran was hospitalized in the VA Hospital in St. Louis, Missouri. During the hospitalization, excision of the aneurysm was performed. The narrative summary of the hospitalization stated that the veteran had incipient congestive heart failure, shortness of breath at night, and Grade III aortic systolic murmur, and needed to use digitalis.

A rating board memorandum prepared by the St. Louis Regional Office on October 29, 1959 concluded that the veteran's dis-

ability should be characterized as an arteriovenous fistula which had its inception in April 1944. The memorandum further concluded that the veteran had never been properly examined and, thus, the correct diagnosis had not been made.

On January 28, 1960, the Director of the VA Compensation and Pension Service at VA Central Office, Washington, D.C., based on the narrative summary of the August–September hospitalization, directed the assignment for a period of ninety days of a temporary 100–percent rating for arteriovenous aneurysm, traumatic, with cardiac involvement, to be followed by a 40–percent rating for arteriovenous aneurysm with cardiac involvement under Diagnostic Code 7113. These ratings were effectuated by a rating board on February 24, 1960. The veteran was examined by the VA on March 15, 1960. There was a Grade I systolic murmur, tachycardia, and blood pressure readings of 170/80, 170/90, and 150/100. The examiner concluded that: there was no current evidence of an arteriovenous aneurysm; a diagnosis of hypertension was not justified although there might have been masking of hypertension by the drugs being taken; tachycardia could not be explained on an organic basis; and there was no heart disease.

In a statement dated March 28, 1960, Dr. Briscoe stated that since the surgery for removal of the aneurysm, the veteran had been under his continuous supervision for hypertensive heart disease which was only partially relieved by the use of digitalis and reduced activity.

In a rating decision dated April 11, 1960, the VA continued the February 24, 1960 rating of 40 percent for arteriovenous aneurysm with cardiac involvement, noting that the March 15, 1960 examination revealed the absence of hypertension, cardiac insufficiency and heart disease.

On June 30, 1980 and September 18, 1984, the veteran underwent additional examinations at the VA Medical Center in St. Louis, regarding his aneurysm and its effect upon him.

Following an onset of chest pain and labored breathing on exertion, angioplasty was performed in January 1988. The veteran was hospitalized during the last week in May 1988 at the St. Louis VA Medical Center for coronary artery disease at which time it was determined that he had significant arterial obstruction. From June 7, 1988 to June 18, 1988, he was hospitalized for coronary artery disease at the VA Medical Center in Chicago, Illinois.

On November 1, 1988, a rating decision continued the veteran's rating for his aneurysm. The veteran, through his representative, then asked that the VA review its February 24, 1960 rating decision on the theory of clear and unmistakable error in that the minimum rating for an aneurysm with cardiac involvement is 60 percent. By rating decision of November 21, 1988, the VA determined that there was no clear and unmistakable error in the February 24, 1960 rating. The BVA in its decision of November 16, 1989 affirmed this determination, and the veteran appealed to the Court.

## ANALYSIS

The issue for decision here is whether the BVA was correct in determining that there was not "clear and unmistakable error" in the 40–percent rating decisions of February and April 1960. Pursuant to 38 C.F.R. § 3.105(a) (1989), promulgated under the authority of 38 U.S.C. § 4005(c) (1982), "previous determinations upon which an action was predicated, including ... degree of disability ... will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended." Under 38 C.F.R. § 4.104 (1989), Diagnostic Code 7113, a traumatic arteriovenous aneurysm with cardiac involvement is to have a minimum rating of 60 percent and a traumatic arteriovenous aneurysm involving an upper extremity with marked vascular symptoms without cardiac involvement is to have a 40–percent rating.

It is not disputed that the February 1960 rating for the veteran's aneurysm "with cardiac involvement" was 40 percent, and that such a rating is not authorized by the Schedule. The Secretary of Veterans Af-

fairs contends on appeal, however, that including the phrase "with cardiac involvement" was simply clerical error and that the veteran's condition did not warrant such description.

The BVA decision states that:

The 40 percent rating for arteriovenous aneurysm 'with cardiac involvement' was assigned by the Rating Board at the instruction of the Director of the Compensation and pension [sic] Service following a review of the hospitalization report and statements from two private physicians one of which contained a reference to hypertensive cardiovascular disease. Since Diagnostic Code 7113 requires 60 percent or higher for cardiac manifestations the 40 percent would appear to be incorrect on its face ...

*Russell L. Bentley,* loc. no. C5629676, at 7 (BVA Nov. 16, 1989).

In this statement, the BVA itself finds error in the February 1960 rating. While never specifically discussing its failure to thus award a 60–percent rating in February 1960, it attempts to use the basis of the results of a VA medical examination the following month to justify this error. After-the-fact justification of a past error cannot make right that which was already wrong. The Board itself stated that the Director of the Compensation and Pension Service directed the use of the phrase "with cardiac involvement" after reviewing certain documents. Our review of the record reveals that the Director specifically relied on the narrative summary of the veteran's 1959 hospitalization in making his determination, and, as indicated above, this summary referenced incipient congestive heart failure, shortness of breath at night, Grade III aortic systolic murmur, and the need to use digitalis.

■ With regard to the February 1960 rating, we hold that the veteran was entitled, under the Schedule, to a 60–percent rating for arteriovenous aneurysm, traumatic, with cardiac involvement. To have provided the veteran with a 40–percent rating for this condition constitutes clear and unmistakable error, pursuant to 38 C.F.R. § 3.105(a). As a matter of law, pursuant to 38 U.S.C. §§ 4061(a)(3)(A), (b), (1988), reversal is mandated.

■ With regard to the April 1960 rating, we render no opinion on the substantive merit of such action. However, if the veteran had been properly awarded a 60–percent rating in February 1960 to which he was entitled, a reduction to a 40–percent rating could not have properly taken place in April 1960 without certain procedural safeguards being followed. The regulation then in effect, 38 C.F.R. § 3.9(e) (1957), required that a reduction not be effected until written notice of reduction and an opportunity to respond had been given. This obviously did not take place. The failure to follow the requirements of this regulation constitutes, as a matter of law, clear and unmistakable error, prejudicial to the veteran, pursuant to 38 U.S.C.A. §§ 4061(a)(3)(A), (D), (b), and 38 C.F.R. § 3.105(a).

■ One other issue needs to be addressed, that of coronary artery disease. It appears that the first time this issue was ever raised was not by the veteran but by the BVA itself, at page 8 of its decision. It did so only in the context of stating that the veteran's present coronary artery disease has not been established as being service-connected. As a consequence of this BVA statement, the veteran presents the argument on appeal that he is entitled to service-connection for his coronary artery disease. The Secretary responds by stating that this disease is a separate disease process unrelated to the service-connected aneurysm. Nothing in the record prior to the BVA statement indicates that the issue of service-connection for coronary artery disease had ever been raised or considered, or that the veteran had been given an opportunity to be heard on it. Under 38 U.S.C. § 4005(d)(1) (1988), a Statement of the Case (SOC) is required to discuss fully each issue. Here, however, the SOC, dated June 19, 1989, was totally silent on the issue of coronary artery disease. Thus, it appears from this record that the issue of any entitlement that the veteran might have for coronary artery disease was not properly before the BVA for decision.

Therefore, the BVA decision does not constitute any binding resolution of this issue and, hence, the issue of entitlement is not properly before this Court.

## CONCLUSION

For the reasons stated above, the decision of the BVA is reversed and the case remanded to it with directions to: award a 60–percent rating effective February 24, 1960 for arteriovenous aneurysm, traumatic, with cardiac involvement, and vacate the April 1960 40–percent rating for this condition.