**John W. AKINS, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 89–115.**

United States Court of Veterans Appeals.

Argued Aug. 27, 1990.

Decided April 23, 1991.

As Amended May 22 and June 3, 1991.

Ronald L. Smith, Washington, D.C., for appellant.

David W. Engel, with whom Raoul L. Carroll, Gen. Counsel, and Andrew J. Mullen, then Acting Asst. Gen. Counsel, Washington, D.C., were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and IVERS, Associate Judges.

NEBEKER, Chief Judge:

Appellant, John W. Akins, appeals the Board of Veterans' Appeals (Board or BVA) decision of September 18, 1989, which denied service connection for his enucleated (surgically removed) right eye. On appeal before the Board, appellant contended that the denial of his original claim for service connection, by rating decision dated July 26, 1946, was clear and unmistakable error. *See* 38 C.F.R. § 3.105(a) (1990). Because the July 26, 1946, decision failed properly to apply the relevant regulation to the prejudice of the substantive rights of appellant, we conclude that the 1946 decision contains clear and unmistakable error. The relevant regulation, Veterans Regulation 1(a), Part I, paragraphs I(b) and (d) (1943) presumed sound condition upon induction and service aggravation of a preexisting condition if there was an increase in disability unless specific contrary findings are made. None were made in this case. Accordingly, we reverse the Board's September 18, 1989, decision which concluded otherwise and remand the case for proceedings consistent with this opinion.

Appellant served in the United States Army from May 23, 1944, until May 26, 1946. At the time of his induction physical, a cataract was noted in his right eye. Based upon information related by appellant, the notation consistently appears in his medical charts, "[c]ataract, right eye, type undetermined, cause traumatic following an injury incurred while playing with a slingshot in 1933 [age 8 or 9], striking his right eye." Despite the induction physical's finding that appellant had no vision in his right eye, he was accepted for limited service. All other medical reports reflect, and appellant has testified, that he had light perception in his right eye.

During a Department of Veterans Affairs (formerly Veterans' Administration) (VA) Regional Office hearing conducted on March 14, 1989, appellant related an incident wherein sand was blown into his right eye while he was on maneuvers during basic training at Camp Wolters, Texas. He stated that he received treatment at a first aid station and was later hospitalized for three days in an effort to reduce soreness and swelling which developed in the eye. He explained that treatment included rinsing the eye with an unspecified solution and application of hot packs. There is, however, no record of this incident in appellant's service medical records.

According to appellant's testimony, his right eye continued to bother him over the next five weeks until he finished basic training. After finishing basic training he was transferred to Fort Ord, California. During transit to Ford Ord by train, appellant's right eye worsened and upon his arrival "flared up." After arriving, he was admitted to the hospital at Fort Ord.

An ophthalmologic examination dated November 13, 1944, the day of appellant's admission, diagnosed his condition as:

1. Glaucoma, chronic, moderately severe, right eye, cause undetermined.
2. Cataract, traumatic, right eye.
3. Iritis, chronic, moderate, right, type and cause undetermined. Vision O.D.–LP [right eye—light perception][.]
4. Iritis, chronic, moderate, right, type and cause undetermined, exacerbation of Vision O.D.–LP.

R. at 54.

Fort Ord Hospital records reveal the course of treatment leading to enucleation of the right eye:

Patient was admitted to Ward C–8 on 13 November 1944 and placed under myotics for observation and definitive treatment. Typhoid was given intravenously and adrenalin soaked cotton was placed in the cul-de-sac and the symptoms subsided somewhat.

On 20 November 1944, multiple staining areas were present over the cornea. This continued until 7 December 1944 when the cornea was free of staining areas. On 14 December 1944, a sclerectomy was performed with an iris inclusion. Following this operation, there was a temporary relief from pain, but the tension continued high and on 1 January 1945, the pain returned. The tension remained from 45 to 65 and the pain was continuous until 30 January 1945 when an enucleation was done. Post-operative reaction normal.

R. at 57.

The *final* diagnosis was listed:

1. Cataract, right eye, type undetermined, cause traumatic following an injury which was accidentally incurred while playing with a slingshot in 1933, striking his right eye.
2. Glaucoma, chronic, moderately severe, right eye, *secondary to No. 1.* o.d. vision L.P.
3. Iritis, chronic, moderate, right, type and cause undetermined, vision L.P. O.D.
4. Iritis, acute exacerbation of, moderate, right, type and cause undetermined, vision L.P. O.D.

*Id.* (emphasis added). Appellant was discharged from the hospital on February 14, 1945.

Appellant's original application for VA benefits was submitted June 19, 1946. The July 26, 1946, rating decision denied service-connected benefits and found that the surgical removal of appellant's right eye was a definitive treatment for glaucoma, a condition secondary to appellant's preexisting traumatic cataract. By letter dated October 27, 1988, appellant requested that the decision be reviewed and amended on the basis of clear and unmistakable error. The Regional Office reopened appellant's claim and "consider[ed] all prior evidence of record." R. at 216.

When appellant's claim was reopened, he argued that the presumption of soundness upon induction and the presumption that preexisting conditions are aggravated in service, if there was an increase in disability, demonstrated clear and unmistakable error. He sought, in effect, to demonstrate error in the failure to apply the regulation which granted him a presumption of service connection. In this context, the Court notes that the factual predicate demonstrated by the presumptions have an important evidentiary value and, to that extent, are the functional equivalent of evidence. Because it is clear that this evidentiary presumption was not previously considered and because it bears directly and substantially on the issue of entitlement to service connection, it provides a basis for reopening the claim. 55 Fed.Reg. 52,273 (1990) (codified at 38 C.F.R. § 3.156(a)); *see Smith v. Derwinski,* 1 Vet.App. 178, 180 (1991) citing *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991) (reopened claims may be subject to a *de novo* legal determination by this Court whether the evidence submitted is "new and material").

Despite having properly reopened appellant's claim, the Regional Office issued a rating decision confirming the 1946 decision which originally denied benefits. Appellant filed his Notice of Disagreement on

November 19, 1988. After exhausting administrative appeals, appellant noted a timely appeal in this Court.

On appeal appellant argues that the original 1946 rating decision should be reversed based on clear and unmistakable error. Having reopened his claim and having the former disposition reviewed, 38 U.S.C. § 3008 (1988), appellant could have chosen to argue that he should prevail because the evidence preponderates in his favor or is at least in equipoise. 38 U.S.C. § 3007(b) (1988); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53–54 (1990). He has chosen instead to accept the burden of demonstrating clear and unmistakable error, presumably to avoid the question whether his entitlement would only date back to the date of reopening, *see* 38 U.S.C. § 3010 (1988), rather than his benefits dating back to 1946 which is explicitly provided for in 38 C.F.R. § 3.105(a).

Section 3.105(a) provides: "Previous determinations on which an action was predicated, including decisions of service connection ... will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended." Appellant's argument is that application of the regulation granting him favorable presumptions, which may only be overcome by clear and unmistakable evidence, demonstrate clear and unmistakable error in the denial of service connection for his enucleated right eye. Appellant further contends that the evidence currently of record is not "clear and unmistakable" evidence and that it is, therefore, insufficient to rebut the presumptions.

██ We observe, for the sake of clarity, that the terms "clear and unmistakable evidence" and "clear and unmistakable error" represent two fundamentally different ideas. Despite the fact that "clear and unmistakable" describes both nouns, the concepts of "evidence" and "error," as used in this context, are separate and distinct. "Clear and unmistakable evidence" describes the burden of proof, at a fact-finding level, necessary to overcome a presumption. "Clear and unmistakable error," on the other hand, describes the legal test employed in reviewing a previous decision. Put definitionally, "clear and unmistakable evidence" describes the persuasiveness of evidence, while "clear and unmistakable error" requires that error, otherwise prejudicial, *see* 38 U.S.C. § 4061(b) (1988), must appear undebatably.

At the time of the 1946 rating decision, the regulation describing basic entitlement to benefits, the presumption of soundness at induction and the presumption of aggravation for a preexisting condition were found in Veterans Regulation 1(a), Part I, paragraphs I(a), (b) and (d) (1943). These paragraphs are currently codified at 38 U.S.C. § 310, § 311 and § 353 (1988), respectively, without substantive change.

Veterans Regulation 1(a), Part I, paragraph I(a) provided that benefits (a "pension") will be paid to persons suffering from disabilities "resulting from personal injury or disease contracted in line of duty, or for aggravation of a preexisting injury or disease contracted or suffered in line of duty." This provision was expressly relied on in the 1946 rating decision denying appellant benefits.

In establishing his disability as either incurred in line of duty or as an aggravation of a preexisting injury or disease, appellant was entitled to favorable presumptions. Veterans Regulation 1(a), Part I, paragraph I(b), provided:

> For the purposes of paragraph I(a) [basic entitlement], every person employed in the active military or naval services shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of examination, acceptance, and enrollment, *or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such active military or naval service.*

(Emphasis added).

Appellant's glaucoma was first diagnosed while he was in military service. Accordingly, he relies on the language of the

regulation and argues that the Secretary must satisfy a two-part test to rebut the presumption of soundness. First, the Secretary must prove by clear and unmistakable evidence that glaucoma existed prior to appellant's military induction. Second, if the Secretary can demonstrate that glaucoma existed prior to service, he must also prove by clear and unmistakable evidence that the glaucoma was not aggravated in service.

More importantly, however, because the parties do not dispute that if the enucleation of appellant's right eye should be service connected, it results in an increased disability, appellant also benefits from the application of Veterans Regulation 1(a), Part I, paragraph I(d), which provided:

> That for the purposes of paragraph I(a) hereof [basic entitlement] a preexisting injury or disease will be considered to have been aggravated by active military service as provided for therein where there is an increase in disability during active service *unless there is a specific finding that the increase in disability is due to the natural progress of the disease.*

(Emphasis added). In short, a proper application of the relevant regulation, with its corresponding presumptions favoring service connection, places an onerous burden on the government to rebut the presumption of service connection. It is undebatable that the 1946 rating decision did not consider paragraphs I(b) and (d). It relied only on paragraph I(a) and did not address the need to rebut the presumptive factual predicates necessary legitimately to deny service connection.

■ The language of the regulation dictated that once the presumption was in place, the burden shifted to the government to offer clear and unmistakable evidence to rebut the presumption of service connection. Additionally, in the case of aggravation of a preexisting condition, the government must point to a specific finding that the increase in disability was due to the natural progression of the disease.

Appellee, during oral argument, attempted to demonstrate that there was clear and unmistakable evidence sufficient to overcome the presumption and show that glaucoma existed prior to service. However, he also conceded that the record does not contain a specific finding that 1) glaucoma, if it did exist prior to service, naturally leads to the enucleation of an eye, or 2) that glaucoma, if it was not a preexisting condition, naturally followed from the preexisting traumatic cataract. While it is true that there is evidence that appellant's glaucoma was secondary to the traumatic cataract, the record does not contain the specific findings required to establish natural progression of a disease and thereby rebut the presumption of service aggravation.

■ This point is dispositive. It is exactly these specific findings which are critical but missing in determining whether service connection is warranted or not. If the natural progression of the traumatic cataract was glaucoma which in turn led to the enucleation of appellant's right eye, service connection is not warranted. If, however, the preexisting condition was aggravated in service, service connection is mandated. Neither the record nor the parties suggest that either alternative is medically unlikely. The application of the regulation granting the presumption of service connection required that evidence rebutting it be presented and be found to be "clear and unmistakable" to defeat the presumption of service connection. Without this evidence, application of Veterans Regulation 1(a), Part I, paragraphs I(b) and (d) mandated the presumption of service connection.

In *Bentley v. Derwinski*, 1 Vet.App. 28, 31 (1990), *appeal dismissed for failure to prosecute*, No. 91–7020 (Fed.Cir. Feb. 22, 1991), this Court held that failure to observe the requirements of a regulation prejudicial to a veteran constitutes, as a matter of law, clear and unmistakable error. Such failure certainly is error here. Accordingly, we hold that the government's failure properly to apply the provisions of Veterans Regulation 1(a), Part I, paragraphs I(b) and (d) prejudiced the substantive rights of the veteran and constitutes clear and unmistakable error in the

1946 rating decision denying service connection. We also necessarily hold, under 38 U.S.C. § 4061(a)(3)(A) (1988), that the 1989 BVA decision which concluded otherwise is not in accordance with law. It is, therefore, reversed and the case is remanded. On remand, the Secretary is instructed to amend the 1946 rating decision to award service connection and determine the appropriate disability rating for appellant taking into account the change brought about by the enucleation of his right eye. In accordance with 38 C.F.R. § 3.105(a), "for the purpose of authorizing benefits," the corrected rating decision must be given the same effect as if rendered July 26, 1946.