Donald P. SONDEL, Appellant,

v.

Togo D. WEST, Jr. Secretary of Veterans Affairs, Appellee.

No. 98–719.

United States Court of Appeals for Veterans Claims.

Nov. 18, 1999.

Ronald L. Smith was on briefs for the appellant.

Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Ari Nazarov were on the brief for the appellee.

Before IVERS, STEINBERG, and GREENE, Judges.

STEINBERG, Judge:

The appellant, veteran Donald · P. Sondel, appeals through counsel a February 12, 1998, Board of Veterans' Appeals (BVA or Board) decision that a February 17, 1947, Department of Veterans Affairs (VA) regional office (RO) decision denying VA service connection for a right-leg disability did not contain clear and unmistakable error (CUE). Record (R.) at 3. The appellant has filed a brief and a reply brief, and the Secretary has filed a brief. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will reverse the BVA decision and remand the matter.

## I. Background

The veteran had active service in the U.S. Army from July to October 1946. R. at 44. The service medical record (SMR) of his induction examination indicated that he had reported having had a hemangioma removed from his right thigh in February 1946 at the Mayo Clinic, and that the

examining physician had "confirmed" that reported history. R. at 14–15. (A hemangioma is a benign tumor. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 740 (28th ed.1994).) He was determined to be "MENTALLY AND PHYSICALLY QUALIFIED FOR SERVICE IN THE ARMY OF THE UNITED STATES". R. at 15. An SMR dated in August 1946 indicated that the veteran was hospitalized and diagnosed as having "[o]ther diseases of the neuromuscular system manifested by severe pain in left thigh on deep pressure and on weight bearing." R. at 40. A September 1946 SMR indicated that when the veteran had been eight years old he had developed a "gradual onset of dull pain" in his thigh. R. at 37. In that SMR, the examiner noted a "[h]ard, indurated mass" on the veteran's left thigh "which [was] very tender to pressure." *Ibid.* (The Secretary states—and the appellant does not dispute—that "the references to the left thigh [are] erroneous and should refer to the right thigh." Brief (Br.) at 2 n. 2.) On September 12, 1946, the veteran was transferred to Halloran General Hospital (Halloran) (R. at 38), with a "[t]ransfer diagnosis" of "[o]ther diseases of the neuromuscular system manifested by severe pain in left [sic] thigh." R. at 24. That same day, an Army physician diagnosed the veteran as having "myalgia" and admitted him into the neurosurgery ward. R. at 30. On September 13, 1946, an Army physician noted that the veteran had been "operated on at Mayo in Feb[ruary] [19]46" and noted that the treatment had "improved his pain" but that "in July of this year while in basic training he developed a pain *different* from original at approx[imate] level of scar." R. at 28. On September 17, 1946, an Army physician noted the veteran's "complicated history" and stated: "He should be discharged from the Army for this condition. Not to have surgery ... while in the Army." R. at 27. A September 18, 1946, neurosurgical consultation report discussed the veteran's February 1946 right-thigh surgery and indicated that during basic training the veteran had experienced "pain in his

right thigh aggravated by standing or walking." R. at 23. The neurosurgeon noted: "I cannot account for this type of pain and the patient's disability but request that Registrar correspond with Mayo Clinic and obtain records of findings and operation at this hospital. I strongly advise that no operative procedures be contemplated in the Army." *Ibid.*

An October 1946 SMR contained a recommendation that the veteran be given a Certificate of Disability for Discharge (CDD) due to the following: "Other diseases of the neuromuscular system right leg manifested by pain in right thigh E.P.T.S. [existed prior to service]. Postoperative Mayo Clinic." R. at 27; *see also* R. at 20 (October 1946 report of Army medical board recommending CDD on same basis). In October 1946, the veteran was given the recommended CDD. R. at 44.

In November 1946, the veteran filed with a VARO an application for VA service connection for severe pain in his right thigh; he noted that although he had "had an operation on this leg before entry into service, the leg was considered to be in very good condition at the time of enlistment." R. at 47. On February 17, 1947, the RO determined that the veteran's claimed condition was "[n]ot incurred in or aggravated by service" and denied service connection for a disease of the neuromuscular system of the right leg manifested by pain in the right thigh. R. at 51. The RO indicated that the veteran's disability had "existed prior to induction" but "was not aggravated beyond the natural progress normally to be expected". Finally, the RO noted: "CDD description of disability is left leg and thigh. This is in error. Records disclose alleged disability to be in right leg and thigh." *Ibid.* The veteran did not appeal to the Board.

In October 1992, the Board determined, inter alia, that the February 1947 RO decision had not contained CUE based on an asserted violation of the veteran's due pro-

cess rights. R. at 207–10. In February 1994, the Court dismissed an appeal of that decision because the veteran raised for the first time to this Court a claim of CUE as to the RO's failure to have accurately applied the regulations in force in 1947. *Sondel v. Brown,* 6 Vet.App. 218 (1994).

In March 1994, the veteran filed with the RO, through counsel, a new claim of CUE in the February 1947 RO decision; he alleged that the RO had failed properly to consider the presumptions of soundness and aggravation that had applied in February 1947. R. at 226. The RO denied the claim in May 1994. R. at 233. In the February 1998, BVA decision here on appeal, the Board denied the veteran's CUE claim. R. at 3.

## II.  Analysis

### A.  *CUE Claim*

An RO decision that has become final, as has the 1947 RO decision at issue here, generally may not be reversed or amended in the absence of CUE. *See* 38 U.S.C. § 5109A; 38 C.F.R. § 3.105(a) (1998); *see also* 38 U.S.C. §§ 5108, 7105(c); *cf.* 38 U.S.C. § 5110(i) (when previously disallowed claim is reopened and allowed on basis of new and material evidence in form of service department records, effective date is date such disallowed claim was filed).

Section 3.105(a) of title 38, Code of Federal Regulations, provides:

Where evidence establishes [CUE], the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of [CUE] has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a). The CUE claim presented here is a collateral attack on a final RO decision. *See Crippen v. Brown,* 9 Vet.App. 412, 418 (1996); *see also Fugo v. Brown,* 6 Vet.App. 40, 44 (1993).

In *Russell v. Principi,* the Court defined CUE as follows:

Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied.... [CUE is] the sort of error which, had it not been made, would have manifestly changed the outcome ... [, an error that is] undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made.

*Russell,* 3 Vet.App. 310, 313–14 (1992) (en banc); *see also Bustos v. West,* 179 F.3d 1378, (Fed.Cir.) (expressly adopting the "manifestly changed the outcome" language in *Russell, supra* ), *cert. denied,* 668 U.S.L.W. 3178 (U.S. Nov. 1, 1999). "A determination that there was a '[CUE]' must be based on the record and the law that existed at the time of the prior ... decision." *Russell,* 3 Vet.App. at 314. "In order for there to be a valid claim of [CUE], ... [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." *Id.* at 313; *see also Damrel v. Brown,* 6 Vet. App. 242 (1994). Moreover, CUE may be based on a showing "that there was *no* evidence before the RO that could have supported denial of the claim on the merits; that is, [that] *all* of the evidence militated in support of the claim." *Crippen,* 9 Vet.App. at 422; *see also Link v. West,* 12 Vet.App. 39, 45 (1998) (quoting *Crippen, supra* ). Finally, a CUE claim must identify the alleged error(s) with "some degree of specificity". *Crippen,* 9 Vet.App. at 420; *Fugo,* 6 Vet.App. at 44 ("to raise CUE there must be some degree of specificity as to what the alleged error is and ... persuasive reasons must be given as to why the result would have been *manifestly* different").

*Russell* also established that, as a threshold matter, a CUE claim cannot be raised for the first time before this Court

but that the claim must have been the subject of a final prior BVA adjudication. *Russell,* 3 Vet.App. at 314–15. On appeal of a BVA determination that there was no CUE in a prior final RO decision, the Court's review is limited to determining whether the Board's conclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (38 U.S.C. § 7261(a)(3)(A)) and whether it is supported by an adequate statement of "reasons or bases" (38 U.S.C. § 7104(d)(1)). *See Eddy v. Brown,* 9 Vet. App. 52, 57 (1996); *Damrel,* 6 Vet.App. at 246; *Russell,* 3 Vet.App. at 315.

■ "In assessing whether the VA has committed CUE in the application of law, this Court will analyze the state of the law as it existed when the determination was made." *Allin v. Brown,* 6 Vet.App. 207, 210 (1994) (citing *Russell,* 3 Vet.App. at 314). The Court has previously addressed the matter of the law regarding the presumptions of soundness and aggravation applicable at the time of the 1947 RO decision; in *Akins v. Derwinski,* the Court held that the presumptions of soundness and aggravation as set forth in Veterans Regulation (VR) 1(a), Part I, para. I (1943), had been applicable to a 1946 RO decision. *Akins,* 1 Vet.App. 228, 230–33 (1991). In this case, the 1947 RO decision itself cited solely to VR 1(a) as the law that it had applied (R. at 51), and the BVA decision here on appeal states that VR 1(a), Part I, para. 1, "as revised by 57 Stat. 556 (July 13, 1943), [was] in effect at that time" (R. at 6). Indeed, the July 13, 1943, Act cited by the Board stated: "That the administrative, definitive, and regulatory provisions of ... Veterans Regulations, as now or hereafter amended, shall be applicable to benefits provided" by VA. Act of July 13, 1943, Pub.L. No. 144, preface, 57 Stat. 554, 554 (1970). Although the *Akins* decision does not mention the July 13, 1943, Act, the opinion nonetheless applied the presumption of soundness as amended by that Act. *Compare id.* at § 9, 57 Stat. at 556 (setting forth revisions to VR 1(a),

Part I, para. 1(b)), *with Akins,* 1 Vet.App. at 231 (quoting in full the text of VR 1(a), Part I, para. 1(b), as amended by 57 Stat. 556). As to the presumption of aggravation, as set forth in VR 1(a), Part I, para. 1(d), that provision was not amended by the July 13, 1943, Act. *See* Act of July 13, 1943, § 9, 57 Stat. at 556 (setting forth all amendments to VR 1(a)). Because *Akins* has not been overturned by the full Court or by the Federal Circuit as to this point, it is settled that VR 1(a) is the source of the law to be applied in this case because the service periods of the veterans in each case terminated in 1946. *See Bethea v. Derwinski,* 2 Vet.App. 252, 254 (1992) (panel decisions constitute "binding precedent" unless overturned by en banc opinion of this Court or decision of Federal Circuit or Supreme Court).

■ It is thus unclear to the Court why the Board, even after stating that VR 1(a), as revised by an act of Congress, was "in effect at" the time of the February 1947 RO decision, nonetheless applied 38 C.F.R. § 2.1063(b) (Supp.1946), without consideration to the specific language of VR 1(a). R. at 6–7. This error, however, does not affect our analysis of the application of the presumption of soundness because the text of § 2.1063(b) and VR 1(a) were virtually identical. The regulation had provided:

[E]very person employed in active service shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of examination, acceptance, and enrollment or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. Relative to notation at enlistment, only those defects, infirmities[,] and disorders noted at the time of examination are to be considered as noted. History of the preservice existence of defects, infirmities[,] or disorders recorded at the time of examination does not constitute a no-

tation of such conditions but will be considered together with all other material evidence in determinations as to the inception of such defects, infirmities[,] or disorders.

38 C.F.R. § 2.1063(b) (Supp.1946); *see also Akins*, 1 Vet.App. 228 (setting forth the text of VR 1(a), Part I, para. I(b), which was essentially the same as § 2.1063(a)); *see also* R. at 51 (1947 RO decision citing VR 1(a), Part I, para. 1). "Clear and unmistakable evidence" was defined by VA regulation as "evidence which makes it obvious or manifest ... that the injury or disease under consideration existed prior to acceptance and enrollment for service". 38 C.F.R. § 2.1063(d) (Supp. 1946). The parties do not dispute that the veteran is presumed to have been in sound condition at the time of his entrance into service because his induction examination (R. at 14–15) did not note the presence of any disabilities noted on his CDD (R. at 44). *Compare* Secretary's Br. at 10 (conceding that "presumption of soundness did attach") *with* Appellant's Br. at 20–21.

Because the presumption of soundness applied to this veteran, the Board was required to consider whether the RO in 1947 had been presented with "clear and unmistakable evidence [that] demonstrate[d] that the ... disease [listed on the veteran's CDD had] existed before acceptance and enrollment and [if so that it] was not aggravated by [his] ... service." VR 1(a), Part I, para. 1(b); 38 C.F.R. § 2.1063(b), (d) (Supp.1946). In this case, the Board determined that the presumption of soundness was rebutted by the following evidence: (1) The SMR of the veteran's induction examination, which contained a notation of a scar on his right thigh and a "confirmed" notation that he had had a hemangioma removed from his right thigh prior to service (R. at 14–15); and (2) the notations on the veteran's CDD and October 1946 Army medical board report that his condition had existed prior to service (R. at 20, 27). R. at 7. Based on the Board's factual analysis of the evidence

before the RO in 1947, the Court cannot conclude that the Board decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law", 38 U.S.C. § 7261(a)(3)(A), in determining that the RO had not erred in deciding (R. at 51) in 1947 that the presumption of soundness had been rebutted. Nor can the Court conclude that the statement of reasons or bases contained in the BVA decision here on appeal was inadequate in this respect. *See* 38 U.S.C. § 7104(d)(1); *Eddy, Damrel,* and *Russell,* all *supra.*

▆▆ Having decided that the RO did not err in its determination that the conditions for which the veteran was discharged had preexisted his service, the Board was next required to consider the applicability of the presumption of aggravation. As a threshold matter, the presumption of aggravation is generally triggered by evidence that a preexisting disability has undergone an increase in severity in service. *See Maxson v. West,* 12 Vet.App. 453, 460 (1999). In this case, the veteran was determined to be "MENTALLY AND PHYSICALLY QUALIFIED FOR SERVICE IN THE ARMY OF THE UNITED STATES" in July 1946, notwithstanding a preexisting "[l]eg [i]njury" noted at induction. R. at 15. Following a medical finding that the preservice, February 1946 surgery on the veteran's right leg had "improved" his leg pain but that he had developed pain in that leg while in basic training (R. at 23, 28), in October 1946 he was given a disability discharge from the Army due to that condition (R. at 20, 27, 44). The veteran's SMRs also noted that, after his July 1946 enlistment, he had been hospitalized in August 1946 and diagnosed as having "[o]ther diseases of the neuromuscular system manifested by severe pain in left thigh on deep pressure and on weight bearing" (R. at 40) and that this same diagnosis was present in September 1946 (R. at 24) and then at separation in October 1946 (R. at 27). Accordingly, the Court holds that it is clear that the veteran's preexisting right-thigh condition, which, as noted above, the Board deter-

mined had preexisted his service (R. at 7), underwent a permanent increase in severity during his service that caused his being medically discharged. The Court notes that this is a very different situation from that involved in *Hunt v. Derwinski,* where the Court held that the presumption of aggravation did not apply to a veteran with a preexisting "trick knee" when there was medical evidence of "only temporary defects during service"; where the veteran was not discharged due to the in-service flare-up of his preexisting condition; and where the veteran had been asymptomatic at separation. *Hunt,* 1 Vet.App. 292, 295 (1991). Thus, the presumption of aggravation was triggered in this case.

■■ As to this presumption, VR 1(a), Part I, para. 1(d), differed significantly from the regulation applied by the Board in the BVA decision here on appeal; that regulation had provided:

> [I]njury or disease noted prior to service or shown by clear and unmistakable evidence, including medical facts and principles, to have had inception prior to enlistment will be conceded to have been aggravated where such disability underwent an increase in severity during service *unless such increase in severity is shown by clear and unmistakable evidence, including medical facts and principles, to have been due to the natural progress of the disease.*

38 C.F.R. § 2.1063(i) (Supp.1946) (emphasis added). In contrast, VR 1(a), Part I, para. 1(d), had provided:

> That for the purposes of paragraph I(a) hereof [basic entitlement] a preexisting injury or disease will be considered to have been aggravated by active military service as provided for therein where there is an increase in disability during active service *unless there is a specific finding that the increase in disability is due to the natural progress of the disease.*

VR 1(a), Part I, para. 1(d) (emphasis added); *see also Akins,* 1 Vet.App. at 232

(setting forth text of VR 1(a), Part I, para. 1(d)).

Rather than apply the presumption of aggravation set forth in VR 1(a), Part I, para. 1(d), the BVA decision on appeal instead applied 38 C.F.R. § 2.1063 (Supp. 1946), which, as noted above, did not contain the "specific finding" requirement. R. at 8–9.

When the Court in *Akins* addressed the presumption of aggravation under VR 1(a), the Court found the "specific finding" language emphasized above to be "dispositive". *Akins,* 1 Vet.App. at 232. The Court stated that the record before the RO decision being assailed for CUE must "contain the *specific findings* required to establish natural progression of a disease." *Ibid.* (emphasis added). As to the need for such findings, the Court noted: "This point is dispositive. It is exactly these specific findings which are critical but missing". *Ibid.* The Court then stated that, because the record before the 1946 RO decision at issue in *Akins* did not contain any evidence of such a specific finding, the RO's "failure to observe the requirements of [the] regulation [sic] ... constitute[d], as a matter of law, clear and unmistakable error". *Ibid.* The Court thus reversed the BVA decision and remanded the matter with instruction to the Secretary "to amend the 1946 [RO] decision to award service connection and determine the appropriate disability rating for [the] appellant". *Id.* at 233.

The applicability of *Akins* to the instant matter is obvious; the facts of this case are indistinguishable from those in *Akins.* Here, as in *Akins,* in reviewing the RO's decision, the Board neither discussed medical evidence that the "[o]ther diseases" (R. at 20, 27) for which the veteran was discharged "naturally followed from the preexisting" postoperative right-thigh scar, nor noted any medical evidence indicating, let alone making a "specific finding", that the symptomatology for which the veteran was discharged represented a natural progression of a preexisting condi-

tion. *Cf.* R. at 23 (Army neurologist's opinion, made with knowledge, but prior to his reviewing records of, veteran's preservice surgery, that stated: "I cannot account for this type of pain"). Indeed, the Board could not have discussed such a specific finding because no such finding is contained in the record that had been before the RO in 1947. As in *Akins*, because "the record does not contain a *specific finding* that [the preexisting condition, in this case a postoperative right-thigh scar,] . . . naturally leads to the [later-manifested condition]" or that the later-manifested condition "naturally followed from the preexisting [condition]", *Akins*, 1 Vet.App. at 232, the provisions of VR 1(a), Part I, para. 1(d), required that the RO "consider[ the veteran's preexisting disease] to have been aggravated by active military service". Based strictly upon the Court's opinion in *Akins*, then, the Court would conclude that the Board's denial of the CUE claim was "not otherwise in accordance with law", 38 U.S.C. § 7261(a)(3)(A), as to the application of the presumption of aggravation set forth in 38 C.F.R. § 2.1063 (Supp.1946), because the evidence before the RO in 1947 could not, as a matter of law, have met the criteria set forth in that regulation. However, one other matter needs to be addressed before we turn to the question of remedy.

The Court notes that the *Akins* opinion did not address the disparity between the C.F.R. provision and the VR 1(a) provision that was codified into law in 1943—indeed, as quoted above, the Court in *Akins* even referred to the "specific finding" requirement as being part of "regulation", *Akins*, 1 Vet.App. at 233, by which the Court obviously meant VR 1(a). In any event, *Akins* is binding law for the proposition that VR 1(a) applies to the instant facts, a conclusion with which the Court agrees. The administrative regulation could not have altered a provision in the VR, and the Court finds no evidence that it was intended to do so. It seems most curious that VA dropped the "specific finding" language from its regulations applicable to wartime veterans but kept that language in the regulation applicable to peacetime veterans. *Compare* 38 C.F.R. § 2.1063(b) (Supp.1946) *with* 38 C.F.R. § 2.1063(k) (Supp.1946). The reason for the replacement of the "specific finding" language with the "clear and unmistakable evidence" language quoted above as to wartime veterans is not explained in any legislative history of which the Court is aware; however, the Court concludes that the Secretary must have intended the revised presumption of aggravation as to wartime veterans to be at least as beneficial to a veteran claimant as the presumption applicable to peacetime veterans. Hence, we conclude that *Akins* does, indeed, control the disposition of this appeal. *See Bethea, supra.*

Having determined that under *Akins* the Board's decision in this case cannot be sustained, we now turn to the question of remedy. In *Akins*, the Court, citing *Bentley v. Derwinski*, 1 Vet.App. 28, 31 (1990), reversed the RO and remanded the matter with instructions to the Secretary "to amend the [February 1947 RO] decision [so as] to award service connection and determine the appropriate disability rating for [the] appellant." *Akins*, 1 Vet. App. at 233. After *Akins*, however, the Court revisited the scope of our review of CUE claims and, as to the scope of such review, emphasized that our review is limited to a review of the *Board*'s decision on the CUE claim, and noted: "It certainly would be inconsistent with our statutory grant of jurisdiction for us to conduct a 'full review,' i.e., a determination of factual and legal sufficiency, of previous decisions over which we neither would nor could have plenary jurisdiction because of either the [Notice of Disagreement] or the [Notice of Appeal] requirement." *Russell*, 3 Vet.App. at 315. Hence, the Court noted the presence of error in the RO decision being attacked on the basis of CUE, but remanded the matter for the Board to determine whether the error rose to the level of CUE, i.e., whether it was "the sort

of error which, had it not been made, would have manifestly changed the outcome". *Id.* at 313–14 (remanding for such consideration); *see also Bustos, supra.* The Court then concluded: "Today's decision by the Court en banc supersedes any contrary statements or holdings contained in any of the Court's prior opinions." *Id.* at 315–16. The question, then, is whether the remedy of reversal, employed in *Akins* and *Bentley,* is still viable in the face of the scope of review set forth in *Russell* and its progeny that we review only BVA decisions and do not perform a full review of the underlying decision(s).

■ We hold that the remedy of reversal is, in fact, still viable today. Since *Russell,* the Court at least twice has reversed a BVA decision denying a CUE claim when there was no basis whatsoever in the record for a contrary result. *Ternus v. Brown,* 6 Vet.App. 370, 377 (1994) (reversing BVA decision and holding that CUE existed in RO decision that had reduced veteran's benefits where Court found that "[i]t is clear" that CUE existed therein (citing *Olson, infra* )); *Olson v. Brown,* 5 Vet.App. 430 (1993) (holding that CUE existed in RO decision that had reduced veteran's benefits where Court found that "[i]t is evident" that CUE existed therein). To be sure, in other cases, where the effect of the error found by the Court was not so clear, the Court has remanded the matter for a determination by the Board as to whether that error would have caused a manifest change in the outcome of the veteran's original claim. *See Mason (Sangernetta) v. Brown,* 8 Vet. App. 44, 53 (1995); *Russell, supra.* We thus reaffirm today that, when it is clear, on the face of the decision being assailed for CUE, that the error alleged did in fact occur and would manifestly have changed the outcome of the case, the Court will reverse, rather than only vacate and remand, as to the BVA decision. This holding is consistent with the holdings of this Court and other courts that a remand is unwarranted when it would serve only to fulfill a procedural duty that would unnecessarily delay and burden agency resources. *See Bigelow v. Virginia,* 421 U.S. 809, 826–27, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975) ("[w]e need not remand ... because the outcome is readily apparent from what has been said above"); *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.,* 910 F.2d 804, 814 (Fed.Cir.1990) (although court would generally remand matter at issue to lower court for initial findings, "such initial findings are not required where, as here, the record is replete with undisputed facts that unequivocally support the district court's action ....[and i]t would be but a wasteful and fruitless exercise to remand so the district court could point out ... the undisputed facts listed above"); *cf. Winters v. West,* 12 Vet.App. 203, 208 (1999) (en banc) ("[u]nder these circumstances, a remand would unnecessarily impose additional burdens upon the BVA with no possibility of any benefit flowing to the veteran").

In this case, as discussed above, the Court can find no evidence of record that would support the requisite specific finding that the veteran's condition represented a natural progression of a preexisting disease, as mandated by VR 1(a), Part I, para. 1(d), and *Akins.* Accordingly, we can find no basis whatsoever to conclude that the RO followed the extant regulation. As to whether, had the RO applied the regulation, the outcome of this case manifestly would have been changed, because the RO determined that the conditions listed on the veteran's CDD were "[n]ot incurred in or aggravated by service" (R. at 51), it is apparent that, had the RO applied the extant regulation as it was required to do, it would have had to "consider[ ]" that the record contained no specific finding that the conditions listed on the veteran's CDD were due to a natural progression of his preexisting condition and thus would have been forced to conclude that those conditions constituted an in-service aggravation of the veteran's preexisting disability. VR 1(a), Part I, para. 1(d); *see also Akins, supra.* Hence, because the Board

did not so conclude, we will reverse the Board's decision as being "not otherwise in accordance with law", 38 U.S.C. § 7261(a)(3)(A), and, accordingly, as in *Akins*, 1 Vet.App. at 233, instruct the Board, on remand, to revise the 1947 RO decision.

Finally, the Court notes that the Board, in an effort to support the conclusion that any error committed by the RO in 1947 would not have resulted in a manifestly different outcome, *see Bustos* and *Russell*, both *supra*, pointed to a 1954 medical record indicating that the veteran had been treated for "tenderness at the upper end of" his right-thigh scar, and that "the prognosis was for an ultimate recovery." R. at 10 (discussing R. at 54). The Board, as it has acknowledged (R. at 10), was not permitted to consider that evidence, which postdated the 1947 RO decision. *See Russell*, 3 Vet.App. at 314 ("determination that there was a '[CUE]' must be based on the record and the law that existed at the time of the prior ... decision"); *see also Damrel, supra.* Moreover, an April 1947 medical record (which also postdated the 1947 RO decision) had clearly indicated that the veteran's "period of service in the Army [had] produced some local irritation [to his preexisting condition] which has caused a recurrence of the symptoms." R. at 53. The Court cannot understand why the Board, while it was knowingly committing error by considering information postdating the 1947 RO decision, would then consider only evidence not in the veteran's favor. *Cf. Jones (Raymond) v. West*, 12 Vet.App. 98, 104 (1998) (noting as "troubling" that the Secretary set forth in his brief to the Court the text of a 1949 regulation in support of his own position without also setting forth the text of another 1949 regulation that was "of potential benefit to the appellant").

### B. Fee Agreement

On April 22, 1998, the appellant, through counsel, filed a Notice of Appeal as to the February 1998 BVA decision. The fee agreement, filed that same day, between the appellant and his counsel, Ronald L. Smith, of the Disabled American Veterans (DAV), stated:

> Appellant agrees to, and hereby does, assign his rights under the Equal Access to Justice Act (EAJA), 28 U.S.C.A. [§ ] 2412[ (d),] to Ronald L. Smith. Ronald L. Smith shall have the right to claim attorney fees or expenses, based upon the appeal which is the subject of this Agreement, to the full extent that such rights are conferred upon Appellant by the [EAJA].

Fee Agreement at 1.

The fee agreement provisions here are essentially the same as those in *Carpenter (Angeline) v. West*, 12 Vet.App. 52, 53 (1998) (per curiam order). In *Carpenter*, the Court suggested that those provisions might be unreasonable and thus unenforceable (*ibid.*), and they were later removed. *See Carpenter v. West*, U.S. Vet. App. No. 96–95 (Appellant's Dec. 14, 1999, response to Court order). The Court trusts that both of these problems will be corrected, as was done in *Carpenter, supra*, before any EAJA application is filed in this case.

### III. Conclusion

Upon consideration of the foregoing analysis, the record on appeal, and the submissions of the parties, the Court reverses the February 1998 BVA decision and remands the matter for expeditious issuance of a readjudicated decision amending the February 1947 RO decision so as to award service connection and provide for an appropriate disability rating, supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 5109A, 7104(a), (d)(1), 7261; VR 1(a), Part I, para. 1(d); 38 C.F.R. § 3.105(a) (1998); *Akins, supra* —all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims

remanded by BVA or the Court). *See Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). On remand, the appellant will be free to submit additional evidence and argument as to the rating for the disability, in accordance with *Kutscherousky v. West,* 12 Vet.App. 369, 372–73 (1999) (per curiam order). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West,* 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West,* 11 Vet.App. 468, 472 (1998).

REVERSED AND REMANDED.