LANCE, Judge:
U.S. Navy veteran Howard E. Chandler appeals through counsel from a March 7, *24 2008, Board of Veterans’ Appeals (Board) decision that denied special monthly pension by reason of being in need of regular aid and attendance of another person, or on account of being housebound. This Court has jurisdiction to review the Board’s decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). See Frankel v. Derwinski, 1 Vet.App. 28, 25-26 (1990). For the following reasons, the Court will reverse the Board’s March 2008 decision.
I. BACKGROUND
A.The Present Claim
Mr. Chandler served on active duty in the U.S. Navy from 1952 to 1956, during the Korean conflict and, thus, he is a wartime veteran. He has a combined disability rating of 80%, including a 60% rating for prostate cancer. At age 57, VA granted Mr. Chandler a non-service-connected disability pension because his disabilities prevented him from maintaining employment and rendered him permanently and totally disabled. VA granted that pension pursuant to 38 U.S.C. § 1521(a).
At age 71, Mr. Chandler also filed a claim for a special monthly pension under section 1521(e). Mr. Chandler reasoned that 38 U.S.C. § 1513(a) eliminated the need to prove that he has a disability rated as permanent and total now that he is over the age of 65, and he meets the remaining requirements of § 1521(e). VA denied Mr. Chandler’s claim. The Secretary asserted that section 1513 was inapplicable to Mr. Chandler’s circumstances per VA’s interpretation of this Court’s precedent in Hartness v. Nicholson, 20 Vet.App. 216 (2006). On that basis, the Board denied Mr. Chandler’s appeal.
B.Issue on Appeal
The issue on appeal is whether Mr. Chandler, who is currently receiving a non-service connected disability pension, qualifies for an increased special monthly pension now that he is over the age of 65. This case involves the interplay of two statutes, 38 U.S.C. §§ 1513 and 1521, and the effect of this Court’s precedent in Hartness. As discussed above, prior to turning 65, the appellant qualified for a non-service-connected pension pursuant to section 1521(a) based upon disability. Under this Court’s decision in Hartness, now that the appellant is over 65, he would appear to qualify for a special monthly pension at a higher monthly rate. However, the Secretary argues that section 1513(b) should be read to preclude him from receiving the higher special monthly pension because, although he is permanently and totally disabled, he does not have a single disability that is rated permanent and total. In other words, the Secretary’s position is that veterans who are over 65, totally disabled, and have started receiving pension prior to turning 65 are to receive a lesser pension than those who are over 65 but not totally disabled when they begin receiving pension. The Court does not adopt this construction of the statute because it would lead to this absurd result, which clearly could not have been the intent of Congress. The dissent takes a position, not advocated by the Secretary, that we should overrule Hartness. For the reasons stated below, the Court concludes that principles of stare decisis counsel against overruling precedent that Congress has allowed to stand and the Secretary has relied on for some time.
C.Statutes
Section 1521 of title 38, U.S.Code, establishes a disability pension for wartime veterans who are totally and permanently disabled, even if the disabilities are not service connected, and regardless of age. This type of pension is generally referred to as a non-service-connected disability *25 pension, and the general provision is contained in 38 U.S.C. § 1521(a), which states:
The Secretary shall pay to each veteran of a period of war who meets the service requirements of this section [service for 90 days or more during a period of war] and who is permanently and totally disabled from non-service-connected disability not the result of the veteran’s willful misconduct, pension at the rate prescribed by this section.
(Emphasis added).
The statute then goes on to list in the subsections that follow the amounts that must be paid based on the circumstances of the claimant. The basic monthly payment rates for unmarried and married veterans are in subsection (b) and (c) respectively. The highest monthly pension rate is provided under subsection (d) to veterans “in need of regular aid and attendance.” Subsection (e) provides an intermediate pension rate for veterans that are “permanently housebound,” but not in need of regular aid and attendance. Specifically, this states:
If the veteran has a disability rated as permanent and total and (1) has additional disability or disabilities independently ratable at 60 per centum or more, or (2) by reason of disability or disabilities, is permanently housebound but does not qualify for pension at the aid and attendance rate provided by subsection (d) of this section, the annual rate of pension payable to the veteran under subsection (b) [unmarried and no children] of this section shall be $4,340.
“A disability rated as permanent and total” is defined as a single disability rated at 100%. See 38 C.F.R. § 3.351(d) (2010). A veteran who is “permanently and totally disabled” is defined as a veteran who is
(1)A patient in a nursing home for long-term care because of a disability.
(2) Disabled, as determined by the Commissioner of Social Security for purposes of any benefits administered by the Commissioner.
(3) Unemployable as a result of disability reasonably certain to continue throughout the life of the person.
(4) Suffering from—
(A) any disability which is sufficient to render it impossible for the average person to follow a substantially gainful occupation, but only if it is reasonably certain that such disability will continue throughout the life of the person; or
(B) any disease or disorder determined by the Secretary to be of such a nature or extent as to justify a determination that persons suffering therefrom are permanently and totally disabled.
38 U.S.C. § 1502(a).
Section 1513 of title 38, U.S.Code, extends the above pension benefits of section 1521 to wartime veterans who are not permanently and totally disabled, but who are age 65 or older. This type of pension is generally referred to as a service pension. The general provision is contained in 38 U.S.C. § 1513(a), which states:
The Secretary shall pay to each veteran of a period of war who is 65 years of age or older and who meets the service requirements ... pension at the rates prescribed by section 1521 of this title and under the conditions (other than permanent and total disability requirement) applicable to pension paid under that section.
(emphasis added).
Section 1513(b), however, also provides: “If a veteran is eligible for pension under both this section and section 1521 of this title, pension shall be paid to the veteran only under section 1521 of this title.”
*26 D. Hartness
In Hartness, a wartime veteran sought a special monthly pension under section 1521(e) because he was over 65 years of age and permanently housebound, but he did not have a disability rated as permanent and total, i.e., a 100% disability rating. 20 Vet.App. at 217. The Board denied the claim because Mr. Hartness did not have at least one disability rated as permanent and total, per section 1521(e). 20 Vet.App. at 218. The specific question this Court confronted in Hartness was whether section 1513 removed the requirement that a veteran age 65 or older have both a total and permanent disability as well as the additional disabling conditions set forth in section 1521(e) to qualify for the pension amount set in section 1521(e). This Court determined that if a veteran is 65 years of age or older and conforms to the service requirements of section 1521, the requirement that he or she be permanently and totally disabled or have a disability rated as permanent and total is excluded (i.e., “the section 1513(a) exception”), or put another way, the veteran is, in effect, permanently and totally disabled as a result of his age. In reaching this conclusion, the Court took into account the legislative history of the statutes at issue. The statutory history was ambiguous and sparse, however. The Court nevertheless determined this interpretation was consistent with the statutes.
The Secretary appealed the Court’s decision to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). However, before briefs were filed, on November 14, 2006, the Secretary filed a motion to voluntarily dismiss his appeal with the consent of opposing counsel. That motion was granted.
E. VA’s interpretation of Hartness
On December 22, 2006, VA Fast Letter 06-28 purported to apply the Hartness holding to various types of claims that an adjudicator may encounter. For a claim for a pension received from a veteran age 65 or older who is already receiving a non-service-connected disability pension under section 1521, it directs adjudicators not to apply the section 1513(a) exception. This directive to regional office adjudicators is conveyed in a single sentence that contains no explanation as to the reasoning behind it. In essence, it states that the Hartness holding, that wartime veterans age 65 or older are not required to have a disability rated as permanent and total in order to qualify for a pension under section 1521(e), does not apply to veterans who were granted non-service-connected pension under section 1521(a) prior to their 65th birthday and, therefore, are already receiving a nonservice-connected disability pension. Those veterans are required, per the Fast Letter, to have, inter alia, a single disability rated at 100% to qualify for a pension under section 1521(e) even when they are age 65 or older. In other words, veterans over the age of 65 who are totally disabled under section 1521(a) are treated less generously than similar veterans who are not totally disabled.
II. ANALYSIS
A. Arguments
Mr. Chandler argues that he is entitled, per this Court’s holding in Hartness, to a special monthly pension under section 1521(e) because he meets the section 1513(a) age requirement and meets all the requirements of section 1521(e) other than having a single disability rated as permanent and total. He relies on the Hartness holding for the contention that he is not required to have a single disability rated as permanent and total.
Mr. Chandler asserts that the Board failed to properly apply the Hartness deci *27 sion to his claim. He argues that Hartness clearly establishes that section 1513 entitles veterans age 65 or older without a disability rated as permanent and total to special monthly pension benefits under section 1521(e) if the veteran meets all the remaining requirements regardless whether he or she is already receiving a non-service-connected disability pension.
The Secretary argues that Mr. Chandler is not entitled to the benefit of section 1513. He argues that a plain reading of section 1513(b) provides that if a veteran is eligible for pension under both sections 1513 and 1521, then VA shall only pay pension benefits under section 1521. Here, Mr. Chandler was already receiving a pension under section 1521, so he cannot avail himself of section 1513 as well. He distinguishes Hartness by stating that, in Hartness, the appellant was not already receiving a non-service-connected disability pension when he applied for service pension benefits under section 1513. The Secretary asserts that certain VA pension benefits, to include those under section 1521(e), are intended only for veterans who are significantly disabled, not for veterans like Mr. Chandler who do not, inter alia, have a single disability rated at 100%.
B. Analysis
“[A] functioning system of laws must give primacy to the plain language of authorities, not the Secretary’s litigation position. Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or — more importantly — veteran can rely on a statute or regulation to mean what it appears to say.” Tropf v. Nicholson, 20 Vet.App. 317, 321 n. 1 (2006). Even if the Court were to agree with the Secretary — and it does not — that the plain meaning of the language of section 1513(b) means that if a veteran is eligible for pension under both sections 1513 and 1521, then VA shall only pay pension benefits under section 1521, this would lead to an absurd result that would be patently inconsistent with the intent of the law. See McBurney v. Shinseki, 23 Vet.App. 136, 141 (2009); Ramsey v. Nicholson, 20 Vet.App. 16, 30 (2006) (“[If] ‘it is clear that ... the literal import of the [statutory] text ... is inconsistent with the legislative meaning or intent, or such interpretation leads to absurd results,’ the Court will not reach that result.”).
In this case, the Secretary’s reading of 38 U.S.C. § 1513(b) would result in some totally disabled veterans over the age of 65 receiving a lesser pension than similar veterans who were not totally disabled. The idea that a group of totally disabled veterans would be treated less generously than an otherwise similar group of veterans who were not totally disabled is very difficult to reconcile with the purpose of title 38. In fact, it is not clear what rational basis would support this classification system. See Reeves v. West, 11 Vet.App. 255 (1998). In this regard, the Court notes that the Secretary’s brief relies on the plain language of the statute rather than arguing that it is ambiguous and that the Court should defer to his interpretation. Secretary’s Brief (Br.) at 8-11. Indeed, the only potential policy justification for the precise phrasing of section 1513(b) offered by the Secretary is a “posit” that perhaps Congress intended that section 1513 need not provide “extra protection” for older veterans who were not being “unjustifiably” denied pensions under 1521. Secretary’s Br. at 11. However, the Secretary’s brief makes this assertion in a single sentence that fails to explain why Congress would have intended the troubling result caused by the language of 1513(b).
Contrary to the Secretary’s assertion, ruling for the appellant would not render *28 section 1513(b) “meaningless.” Secretary’s Br. at 9. Even under the appellant’s interpretation, section 1513(b) precludes those veterans who are eligible under both 1513 and 1521 (such as the appellant here) from collecting two pensions at the same time. There is no dispute here that the appellant’s dual eligibility does not entitle him to be paid twice. Rather, the only question is whether he can be paid a single pension at the higher rate described in section 1521(e) rather than the lower, basic rate.
If the Court were to conclude that the scenario presented in this case demonstrates that Hartness was incorrectly decided, then the Court could agree with the dissent to overrule that case and conclude that the Board decision should be affirmed because Mr. Chandler does not meet the criteria for a higher pension under either section 1513 or section 1521. However, three factors counsel against overruling Hartness.
First, the Court concludes that Hartness was rightly decided in the first instance. Although our dissenting colleagues disagree, the majority does not find that the wording of sections 1513(a) and 1521 is so clear as to mandate reversal of Hartness. In fact, the Hartness panel found the plain language was clear in support of its decision. The En Banc Court therefore now has the responsibility to interpret the statutes. As explained in Hartness, interpreting sections 1513(a) and 1521 such “that a veteran who is 65 years or older and conforms to the service requirements of section 1521 is entitled to a pension at the rates and under the conditions, other than permanent and total disability, required by section 1521” is consistent with the legislative history of those statutes and Congress’s intent to provide a pension to veterans over the age of 65 years of age, regardless of disability. Hartness, 20 Vet. App. at 220-21; see Veterans Education and Benefits Expansion Act of 2001, Pub.L. 107-103, 115 Stat. 991. Further, as also noted in that decision, this interpretation is “mindful that any ambiguity in interpretation must be resolved in the veteran’s favor.” Hartness, 20 Vet.App. at 221 (citing Gardner, 513 U.S. at 118, 115 S.Ct. 552).
Second, overruling Hartness would not make the precise phrasing of section 1513(b) any more meaningful. Assuming that Hartness was incorrectly decided, and the majority holds that it was not, i.e., assuming old-age pensions under section 1513 were calculated exactly the same way as disability pensions under 1521 were calculated once the eligibility was established, that result still does not make sense of section 1513(b). There would be no reason for that provision to specify that pensions under 1521 trump those under 1513 if they are calculated in an identical manner once eligibility is established. However, even if there is no difference in result, it is more likely for Congress to state that section 1521 is the default provision because all the details are contained in that section while section 1513 merely creates an additional type of pension, which incorporates section 1521’s provisions by reference. In any event, overruling Hartness would not clarify the precise phrasing of section 1513(b). Therefore, the Court is not persuaded to overrule Hartness.
Third, even if overruling Hartness might result in an outcome more consistent with the confusing language of the statute, the time for reconsidering Hartness de novo is past. The Supreme Court has said “often and with great emphasis that ‘the doctrine of stare decisis is of fundamental importance to the rule of law.’” Patterson v. McLean Credit Union, 491 U.S. 164, 172, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (citing Welch v. Tex. Dept. of Highways & *29 Pub. Transp., 483 U.S. 468, 494, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987)). Pursuant to the doctrine of stare decisis, a Court’s precedent should “be respected unless the most convincing of reasons demonstrates that adherence to it puts [the Court] on a course that is sure error.” Citizens United v. FEC, — U.S. -, 130 S.Ct. 876, 911-12, 175 L.Ed.2d 753 (2010). “Beyond workability, the relevant factors in deciding whether to adhere to the principle of stare decisis include the antiquity of the precedent, the reliance interests at stake, and of course whether the decision was well reasoned.” Montejo v. Louisiana, — U.S.-,-, 129 S.Ct. 2079, 2088-89, 173 L.Ed.2d 955 (2009).
In this case, the Court does not find that the Secretary has advanced “the most convincing of reasons” demonstrating that Hartness “puts [the Court] on a course that is sure error.” Citizens United, 130 S.Ct. at 911-12. As discussed in this opinion, the Court concludes that Hartness was a well-reasoned decision that produced a logical result and one that veterans and VA have relied on for over four years. Simply put, in difficult cases of statutory interpretation, courts should resolve an issue once and leave it to the legislature to amend the statute if it disagrees. See Square D. Co. v. Niagara Frontier Tariff Bureau, 476 U.S. 409, 424, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986) (“Stare decisis is usually the wise policy because in most matters, it is more important that the applicable rule of law be settled than that it be settled right.... This is commonly true, even where the error is a matter of serious concern, provided correction can be had by legislation.”). Revisiting and reversing issues of statutory interpretation is not likely to produce a result that is substantially more satisfactory than the first result, and the energies of the judiciary are better spent on resolving novel issues when the legislature is fully capable of revising and clarifying the ambiguous law in dispute. Cf. Brown v. Allen, 344 U.S. 443, 540, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (Jackson, J., concurring) (“Whenever decisions of one court are reviewed by another, a percentage of them are reversed. That reflects a difference in outlook normally found between personnel comprising different courts. However, reversal by a higher court is not proof that justice is thereby better done. There is no doubt that, if there were a super-Supreme Court, a substantial proportion of our reversals of state courts would also be reversed.”). To the extent that our dissenting colleagues argue that Hartness was “wrongly decided,” post at 42, they fail to explain how the decision is “unworkable” in light of the fact it merely required the Secretary to pay defined benefits to an easily identifiable class of claimants. Furthermore, it contains no attempt to demonstrate that Hartness was “badly reasoned” other than to restate the ambiguous authorities and pronounce that they compel the opposite conclusion. Post at 40.
Our dissenting colleagues suggest that stare decisis is not applicable to the current decision, or in any situation where the en banc Court has the opportunity to overrule a prior panel precedent. However,
The purpose of an en banc proceeding is not simply to determine whether a result in a particular case is correct, nor is an en banc court convened simply to second guess a three-judge panel. The reason for invoking the en banc process is to maintain the consistency of the law of the [court] and to resolve issues of exceptional importance.
U.S. v. Strickland, 601 F.3d 963, 987 (9th Cir.2010) (Reinhardt, J., dissenting). Further, the law “is established not just by en banc decisions, but by panel decisions as well.” Gulf Power v. Federal Communications Com’n, 226 F.3d 1220, 1224 (11th *30 Cir.2000); see Harrison v. Derwinski, 1 Vet.App. 438 (1991) (en banc order) (noting that this Court’s published opinions are binding precedent and must be respected under principle of stare decisis). Although the en banc Court has the power to overrule a prior panel decision, this does not mean that it is required to do so. See U.S. v. Aguon, 851 F.2d 1158, 1175, n. 6 (9th Cir.1988) (en banc) (Reinhardt, J., concurring) (“court must make two decisions in order to reject precedent: first, to go en banc, and second, to overrule the earlier case ... In the first type of case, the court, when deciding whether to go en banc, is required to give[ ] some consideration to whether the principles of stare decisis should preclude the en banc court from overruling the earlier case.”). Here, the Court finds that although it has the opportunity to overrule Hartness, for the reasons outlined above, including the interests of consistency of the Court’s case law, it declines to do so.
In this case, the Secretary had the opportunity to appeal this Court’s decision in Hartness to the Federal Circuit and did so. While it is not clear from the Secretary’s voluntary motion to dismiss why the appeal was withdrawn, it does not appear that the appeal was rendered moot, but that a unilateral decision was made to terminate the appeal, which was granted on the basis that Mr. Hartness’s counsel “was consulted and ... consented to dismiss the appeal.” Hartness v. Nicholson, 208 Fed.Appx. 880 (Fed.Cir.2006) (unpublished consent motion to dismiss appeal). To the extent that our dissenting colleagues suggest that the Secretary could properly issue a guidance letter telling regional offices to ignore the reasoning and holding of Hartness in cases that were not factually identical in lieu of pursuing an appeal, post at 40-41, we strongly disagree. As the full Court held in Ribaudo v. Nicholson, nonacquiescence by the Secretary is not a legitimate tactic for dealing with opinions with which he may disagree. 20 Vet.App. 552, 556 (2007) (en banc).
Furthermore, the Court’s decision in Hartness has not gone unnoticed in Congress where legislation has been introduced to abrogate that decision, but has failed to pass both chambers. See S. Rep. NO. 148, 110th Cong., 1st Sess. 32-38 (2007) (discussing Hartness and legislation that passed the U.S. Senate Committee on Veterans’ Affairs’ to abrogate it). Therefore, the Court concludes that the interpretation of section 1513(b) reached in Hartness is past the point of judicial reconsideration without an exceptional showing demonstrating that the principles of stare decisis should not be applied.
As Judge Learned Hand observed many years ago: “[I]t is now well settled that the ‘law of the case’ does not rigidly bind a court to its former decisions, but is only addressed in good sense.” Higgins v. California Prune & Apricot Grower, Inc., 3 F.2d 896, 898 (2nd Cir.1924). The Court concludes that here, it is in good sense not to overrule Hartness. Given that the Court concludes that the Secretary’s argument is unpersuasive and it would not be appropriate to revisit what has been decided in Hartness, we agree with the appellant’s argument in this case. Section 1513(b) prevents a veteran from collecting one pension under section 1521 and a second pension under section 1513, but it does not prevent a veteran from receiving a higher pension under section 1513 simply because he would be eligible only for a basic pension under section 1521. This result prevents one class of totally disabled veterans from being treated less generously than a similarly situated class of veterans who are not totally disabled and is consistent with the rule that ambiguity in title 38 should be resolved in favor of *31 veterans. See Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994).
Accordingly, we conclude that the Board erred in determining that the appellant is not entitled to the application of section 1513 and the ruling in Hartness, and that the appellant is required to show a single permanent disability that is a 100% disability under the schedule for disabilities in order to receive special monthly pension under section 1521(e). R. at 6-10. VA has already determined that the appellant has a non-service-connected disability pension because his disabilities prevented him from maintaining employment, has a disability rated at 60%, and now is over the age of 65. He is, therefore, entitled to special monthly pension under section 1521(e), pursuant to the interpretation of section 1513(a) in Hartness.
III. CONCLUSION
Based on the foregoing reasoning, the Court REVERSES the Board’s March 7, 2008, decision that the appellant’s current pension under section 1521(a) precludes him from receiving upgraded benefits in the form of a special monthly pension now that he is over 65, and the Court REMANDS the matter for further proceedings consistent with this opinion.
LANCE, Judge, filed the opinion of the Court.
DAVIS, Judge, filed a concurring opinion.
KASOLD, Chief Judge, filed a dissenting opinion in which GREENE, Judge, joined.