﻿Citation Nr: AXXXXXXXX
Decision Date: 08/29/19 Archive Date: 08/29/19

DOCKET NO. 180929-12591
DATE: August 29, 2019

ORDER

Entitlement to service connection for a urinary disability, to include as secondary to a lumbar spine disability, is granted. 

Entitlement to service connection for a bowel disability, to include as secondary to a lumbar spine disability, is granted. 

Entitlement to rating in excess of 20 percent prior to June 7, 2016 and in excess of 40 percent from June 7, 2016 to May 14, 2018 for a lumbar spine disability is denied. 

Entitlement to a rating in excess of 0 percent prior to June 7, 2016 and in excess of 10 percent from June 7, 2016 to May 14, 2018 for a painful Cesarean section (c-section) scar is denied. 

FINDINGS OF FACT

1. Resolving all reasonable doubt in the Veteran’s favor, her urinary disability is proximately due to her service-connected lumbar spine disability. 

2. Resolving all reasonable doubt in the Veteran’s favor, her bowel disability is proximately due to her service-connected lumbar spine disability. 

3. Prior to June 7, 2016, the Veteran’s lumbar spine disability was manifested by chronic back pain and limitation of motion with flexion to, at worst, 40 degrees without competent, credible, objective evidence of ankylosis or IVDS with incapacitating episodes lasting at least four weeks but less than six weeks.

4. From June 7, 2016 to May 14, 2018, the Veteran’s lumbar spine disability was manifested by chronic back pain and limitation of motion with flexion to, at worst, 30 degrees, without competent, credible, objective evidence of ankylosis or IVDS with incapacitating episodes lasting at least six weeks during a 12-month period.

5. Prior to June 7, 2016, the competent, credible evidence of record indicates that the Veteran’s c-section scar was not characterized by pain, tenderness, or any other objectively discernible symptomatology.

6. From June 7, 2016 to May 14, 2018, the competent, credible evidence of record indicates that the Veteran’s c-section scar was chronically tender/painful. 

CONCLUSIONS OF LAW

1. The criteria for service connection for urinary disability, to include as secondary to a lumbar spine disability, have been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.310. 

2. The criteria for service connection for bowel disability, to include as secondary to a lumbar spine disability, have been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.310. 

3. The criteria for a rating in excess of 20 percent prior to June 7, 2016 and in excess of 40 percent from June 7, 2016 to May 14, 2018 for a lumbar spine disability have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 5243. 

4. The criteria for a rating in excess of 0 percent prior to June 7, 2016 and in excess of 10 percent from June 7, 2016 to May 14, 2018 for a c-section scar have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.71a, Diagnostic Code 7804.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the U.S. Army from August 1996 to September 2003. The Veteran selected the Higher-Level Review Lane when she opted into the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form in May 2018. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). Accordingly, the September 2018 AMA rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction. 

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303 (a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d). 

As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff’d, 78 F.3d 604 (Fed. Cir. 1996).

Service connection may be established on a secondary basis for a disability that is proximately due to or the result of a service-connected disease or injury. See 38 C.F.R. § 3.310 (a) (2015); Harder v. Brown, 5 Vet. App. 183, 187 (1993). Additional disability resulting from the aggravation of a nonservice-connected condition by a service-connected condition is also compensable under 38 C.F.R. § 3.310 (a). See Allen v. Brown, 7 Vet. App. 439, 448 (1995).

Generally, lay evidence is competent with regard to a disease with “unique and readily identifiable features” that is “capable of lay observation.” See Barr v. Nicholson, 21 Vet. App. 303, 308-09 (2007) (concerning varicose veins); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (a dislocated shoulder); Charles v. Principi, 16 Vet. App. 370, 374 (2002) (tinnitus); Falzone v. Brown, 8 Vet. App. 398, 405 (1995) (flatfoot); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge).

When there is an approximate balance in the evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102. The Court held that an appellant need only demonstrate that there is an “approximate balance of positive and negative evidence” in order to prevail. See Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

1. Service connection for urinary disability, to include as secondary to a lumbar spine disability, is granted.

The Veteran maintains that her current urinary disability is either caused by or aggravated by her service-connected lumbar spine disability.

As an initial matter, the Board observes that the Veteran has a current diagnosis of urinary incontinence as reflected in the March 2016 VA examination and at the June 2016 private Disability Benefits Questionnaire (DBQ) examination. Further, the record reveals that the Veteran is currently service-connected for a lumbar spine disability. 

At issue is whether there is a relationship between the Veteran’s currently diagnosed urinary disability and her lumbar spine disability. The Board finds that the evidence is at least in equipoise as to this element for service connection. In that regard, the law is clear. Pursuant to the “benefit-of-the-doubt” rule, where there is “an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter,” the Veteran shall prevail upon the issue. 38 U.S.C. § 5107. Although there is evidence against the claim, specifically the May 2016 VA medical opinion, the June 2016 private opinion proffered by a neuroradiologist who reviewed the Veteran’s claims file and medical record, lay statements, and performed a full physical examination, indicates that the symptoms of the Veteran’s urinary disability are consistent with neurogenic bladder with incontinence related to the Veteran’s service-connected lumbar spine disability. The Board therefore concludes that, with the benefit of the doubt resolved in the Veteran’s favor, a grant of service connection for a urinary disability, to include as secondary to a lumbar spine disability, is warranted. 

2. Service connection for bowel disability, to include as secondary to a lumbar spine disability, is granted.

The Veteran maintains that she has a current bowel disability that is either caused by or aggravated by her service-connected lumbar spine disability.

Regarding the first element for service connection, the diagnosis of a current disability, the Board finds that the Veteran has been diagnosed with a neurogenic bowel disorder. While the examiner at the May 2016 VA examination determined that there was no current bowel-related disability, the Board finds that the evidence on this point, including the Veteran’s competent and credible lay statements from herself and her spouse regarding the nature of this claimed disability, and the diagnosis rendered by a private neuroradiologist following a review of the claims file, an interview with the Veteran, and a physical examination, places the matter in equipoise. Pursuant to the “benefit-of-the-doubt” rule, where there is “an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter,” the Veteran shall prevail upon the issue. 38 U.S.C. § 5107. Resolving all reasonable doubt on this point in the Veteran’s favor, the Board finds that the Veteran has a current bowel disability. Further, the record reveals that the Veteran is currently service-connected for a lumbar spine disability. 

At issue is whether there is a relationship between the Veteran’s currently diagnosed bowel disability and her lumbar spine disability. The Board finds that the evidence is also at least in equipoise as to this element for service connection. Although there is evidence against the claim, specifically the May 2016 VA medical opinion, the June 2016 private opinion proffered by a neuroradiologist who reviewed the Veteran’s claims file and medical record, lay statements, and performed a full physical examination, indicates that the symptoms of the Veteran’s bowel disability are consistent with neurogenic bowels with incontinence related to the Veteran’s service-connected lumbar spine disability. The Board therefore concludes that, with the benefit of the doubt resolved in the Veteran’s favor, a grant of service connection for a bowel disability, to include as secondary to a lumbar spine disability, is warranted. 

Increased Rating

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities. The percentage ratings are based on the average impairment of earning capacity and individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding a degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3.

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Consistent with the facts found, the rating may be higher or lower for segments of the time under review on appeal, i.e., the rating may be “staged.” See Fenderson v. West, 12 Vet. App. 119 (1999).

In rendering a decision on appeal the Board must also analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) (“although interest may affect the credibility of testimony, it does not affect competency to testify.”).

A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303 (2007). Lay evidence may establish a diagnosis of a simple medical condition, a contemporaneous medical diagnosis, or symptoms that later support a diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). A veteran as a layperson is competent to offer an opinion on a simple medical condition. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (citing Jandreau at 1372).

Where functional loss due to pain on motion is alleged, 38 C.F.R. §§ 4.40 and 4.45 must be considered. DeLuca v. Brown, 8 Vet. App. 202, 207-08 (1995). A finding of functional loss due to pain must be supported by adequate pathology and evidenced by the visible behavior of the claimant. Johnston v. Brown, 10 Vet. App. 80, 85 (1997).

In Burton v. Shinseki, 25 Vet. App. 1 (2011), the Court held that consideration of 38 C.F.R. § 4.59 is not limited to cases involving arthritis, thereby providing for the possibility of a rating based on painful motion of a joint, regardless of whether the painful motion stemmed from joint or periarticular pathology. The Court held that pain must affect some aspect of the normal working movements of the body such as excursion, strength, speed, coordination and endurance to constitute functional loss. Mitchell v. Shinseki, 24 Vet. App. 32, 33, 43 (2011). Although pain may cause functional loss, pain, itself, does not constitute functional loss and is just one factor to be considered when evaluating functional impairment. Id. 

The Court explained in Mitchell that, pursuant to 38 C.F.R. §§ 4.40 and 4.45, the possible manifestations of functional loss include decreased or abnormal excursion, strength, speed, coordination, or endurance (38 C.F.R. §§ 4.40), as well as less or more movement than is normal, weakened movement, excess fatigability, and pain on movement (as well as swelling, deformity, and atrophy) that affects stability, standing, and weight-bearing (38 C.F.R. § 4.45 ). Thus, functional loss caused by pain must be rated at the same level as if the functional loss were caused by any of the other factors cited above. Consequently, in rating the severity of a joint disability, VA must determine the overall functional impairment due to these factors. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011).

The Board notes, however, that the Court has held that 38 C.F.R. § 4.40 does not require a separate rating for pain but rather provides guidance for determining ratings under other diagnostic codes assessing musculoskeletal function. See Spurgeon v. Brown, 10 Vet. App. 194 (1997).

In determining the disability evaluation, VA has a duty to acknowledge and consider all regulations, which are potentially applicable, based upon the assertions and issues raised in the record and to explain the reasons and bases for its conclusion. Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

3. Entitlement to rating in excess of 20 percent prior to June 7, 2016 and in excess of 40 percent from June 7, 2016 to May 14, 2018 for a lumbar spine disability is denied. 

By way of procedural history, the Veteran submitted a VA Form 21-0966 Intent to File on October 30, 2015. In December 2015, within a year of submission of the Intent to File, she filed a formal claim for an increased rating of her lumbar spine disability, then rated as 20 percent disabling. The regional office issued a rating decision in April 2016, which confirmed and continued the 20 percent disability rating for the Veteran’s lumbar spine disability. 

In September 2016, the Veteran submitted a private DBQ and nexus opinion that addressed the current severity of her lumbar spine disability, as well as her ancillary claims for urinary and bowel disorders. She also proffered lay statements authored by her and her spouse. The Veteran then requested reconsideration of the increased rating claim for her lumbar spine disability. She was subsequently awarded a 40 percent disability rating, effective June 7, 2016, the date of the DBQ. 

As the Veteran submitted new and material evidence pertinent to her claim within a year of the April 2016 rating decision, the Board finds that the October 2015 claim is on appeal. Thus, the Board will review all evidence from one year prior to that date to determine whether a rating in excess of 20 percent is warranted prior to June 7, 2016 and whether a rating in excess of 40 percent is warranted thereafter. The Board notes that the rating for the Veteran’s lumbar spine disability has been decreased to 20 percent effective January 15, 2019 in an April 1, 2019 rating decision. However, this appeal period is not before the Board and will not be discussed herein.

VA regulations dictate that a back disability is to be rated under either the General Rating Formula for Diseases and Injuries of the Spine or the Formula for Rating Intervertebral Disc Syndrome (IVDS) based on Incapacitating Episodes, whichever method results in the higher evaluation when all disabilities are combined. 38 C.F.R. § 4.71a, Diagnostic Code 5243.

Under the General Rating Formula for Diseases and Injuries of the Spine, a 20 percent evaluation is warranted if forward flexion of the thoracolumbar spine is greater than 30 degrees, but not greater than 60 degrees; when the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or when muscle spasm or guarding is severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent evaluation is warranted if forward flexion of the thoracolumbar spine is 30 degrees or less or there is favorable ankylosis of the entire thoracolumbar spine. A 50 percent evaluation is warranted if there is unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent evaluation is warranted for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Diagnostic Code 5243.

Any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, are to be evaluated separately, under an appropriate diagnostic code. 38 C.F.R. § 4.71a, General Rating Formula, Note (1).

Normal ranges of motion of the thoracolumbar spine are flexion from 0 to 90 degrees, extension from 0 to 30 degrees, lateral flexion from 0 to 30 degrees, and lateral rotation from 0 to 30 degrees. 38 C.F.R. § 4.71, Plate V. Furthermore, fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Diagnostic Code 5242, Note (5).

Under the current Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, a 10 percent rating is assigned when IVDS causes incapacitating episodes having a total duration of at least one week, but less than two weeks, during a 12-month period on appeal. A 20 percent rating is assigned when IVDS causes incapacitating episodes having a total duration of at least two weeks, but less than four weeks, during a 12-month period on appeal. A 40 percent rating is assigned when IVDS causes incapacitating episodes having a total duration of at least four weeks, but less than six weeks, during a 12-month period on appeal. A 60 percent rating is assigned when IVDS causes incapacitating episodes having a total duration of at least six weeks during a 12-month period on appeal. Id.

An incapacitating episode is a period of acute signs and symptoms due to IVDS that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Diagnostic Code 5243, Note (1).

The Board now turns to the evidence of record. In November 2015, the Veteran submitted a statement averring that her back pain had become more painful and debilitating and resulted in further reduced range of motion.

The Veteran was provided a VA examination in March 2016 in conjunction with her increased rating claim. The examiner endorsed a complete review of the Veteran’s claims file and provided an in-person examination. The Veteran reported symptoms of chronic, sharp, stabbing low back pain and stiffness accompanied by bilateral leg weakness, numbness, and tingling. She also indicated that she experienced urinary incontinence. These symptoms led to multiple emergency room visits and treatment with steroid injections, physical therapy, Tylenol 3 and Norco. She indicated that flare-ups escalated the pain to 9/10 and she also experienced back spasms once or twice a week. The Veteran reported that these symptoms made it difficult for her to sit or stand for longer than thirty minutes without having to change positions. They also made bending or lifting difficult.

Range of motion testing was performed. Forward flexion was limited to 40 degrees. Extension was limited to 10 degrees. Right lateral flexion was limited to 15 degrees. Left lateral flexion was limited to 15 degrees. Right lateral rotation was limited to 20 degrees. Left lateral rotation was limited to 20 degrees. This abnormal range of motion led to difficulties with activities that required bending. Pain was observed on all ranges of motion. There was also objective evidence of localized tenderness or pain on palpation of the lumbar midline characterized by wincing and guarding. The examiner also observed pain with weightbearing.

The Veteran was unable to perform repetitive-use testing, as she reported severe pain when performing initial range of motion tests. The Veteran was not observed following repetitive use over time or on flare-ups; thus, the examiner was unable to determine whether the examination was medically consistent or inconsistent with her statements describing functional loss under those conditions. 

The Veteran experienced muscle spasms, localized tenderness, and guarding that resulted in an antalgic, unsteady gait. Additional factors contributing to the Veteran’s disability included weakened movement. Muscle strength testing revealed decreased strength in both hips. There was no muscle atrophy observed. The reflex examination revealed hypoactivity in both ankles. The sensory examination showed decreased sensation to light touch in both of the Veteran’s lower legs/ankles. She displayed radicular symptoms, including intermittent pain, paresthesias and/or dysesthesias, and numbness in both lower extremities. The examiner noted the involvement of the Veteran’s sciatic nerve and diagnosed her with moderate radiculopathy of the bilateral lower extremities. The examiner indicated that there were no other neurologic abnormalities. The Veteran was diagnosed with IVDS, but the examiner did not find that it caused signs and symptoms that required physician prescribed bedrest. She denied the use of assistive devices. Regarding the functional impact of the Veteran’s lumbar spine disability, the examiner noted that the Veteran had to change positions as needed and avoid heavy lifting or repetitive bending. The examiner noted the Veteran’s reports of urinary incontinence but found no objective evidence that these issues were related to her lumbar spine disability. The final diagnoses rendered were lumbar spine degenerative disc disease, IVDS, and lumbar radiculopathy of the bilateral lower extremities. 

The Veteran proffered lay statements authored by her and her spouse detailing the severity of her disabilities. She wrote that since leaving service, she suffered from daily, severe back pain and back spasms that caused problems with lifting, bending, and living a normal life. The Veteran indicated that she was unable to tie her shoes and had to get her children to help her. She reported the inability to walk or sit for long periods of time as her legs would become numb and begin to throb. Her husband corroborated the Veteran’s statements, writing that her back has impacted her daily life tremendously. He indicated that she spent long hours in the emergency room and doctors’ offices seeking help. The Veteran was dependent on pain medication which provided little relief. After work, the Veteran sat on her couch for several hours with a heating pad to help with lower back spasms. The Veteran also required her husband’s help to move from place to place as her lower extremities went numb or would swell because of her back. 

The Veteran submitted a DBQ completed by a private physician in June 2016. The private physician endorsed a review of the Veteran’s claims file as provided by the Veteran, as well as the aforementioned lay statements from her and her spouse. He then performed a ninety-minute in-person examination. There, the Veteran reported increased pain and decreased range of motion during flare-ups. 

Range of motion testing revealed forward flexion limited to 30 degrees. Extension was limited to 10 degrees. Right lateral flexion was limited to 10 degrees. Left lateral flexion was limited to 10 degrees. Right lateral rotation was limited to 20 degrees. Left lateral rotation was limited to 20 degrees. Repetitive use testing was performed with no change in range of motion. Objective evidence of pain during active and passive range of motion with weight-bearing and non-weightbearing were observed. The physician noted that muscle spasm and guarding caused an abnormal gait and abnormal spinal contour. Regarding contributing factors of the disability, the physician indicated that the Veteran had less movement than normal, excess fatigability, incoordination, pain on movement, instability of station, disturbance of locomotion, and interference with sitting and standing. Muscle strength testing revealed reduced muscle strength on both sides of the Veteran’s body. The sensory examination revealed decreased sensation to light touch in both lower extremities. Straight leg raising tests were positive. Radicular symptoms of the bowel and bladder were observed. Other radicular symptoms included pain, paresthesias and/or dysesthesias, and numbness in both lower extremities. The Veteran’s radiculopathy was characterized as moderate. IVDS was diagnosed and the examiner noted that the Veteran had been on physician prescribed bedrest for at least six weeks during the previous twelve months. The Veteran endorsed use of a brace. The physician noted that imaging studies had been performed that documented arthritis. He ultimately diagnosed the Veteran with a range of lumbar spine disabilities, including mechanical back pain syndrome, lumbosacral sprain/strain, facet joint arthropathy, degenerative disc disease, degenerative scoliosis, foraminal/lateral recess/central stenosis, degenerative spondylolisthesis, spondylolisthesis/isthmic spondylolisthesis, IVDS, and radiculopathy. 

In the accompanying medical opinion, the private physician indicated that, based on his experience and expertise, a review of the Veteran’s medical records, and the examination, the Veteran’s lumbar spine disability was underrated. He wrote, pertinent to this portion of the decision, that the Veteran had a severe lumbar back problem with severe left and right leg radiculopathy, characterized by radiating pain, sensory changes, and decreased reflex strength. He noted that at the private examination she exhibited markedly limited range of motion beyond that which was seen in her previous VA examination.

In October 2016, a VA medical opinion was requested to reconcile the additional diagnoses proffered in the private DBQ with those rendered by VA examiners. The examiner reviewed the Veteran’s claims file and medical record prior to providing an opinion. He noted that the Veteran was diagnosed with lumbar spine degenerative disc disease, IVDS, and lumbar radiculopathy per the March 2016 VA examination. However, the examiner disagreed with the diagnoses of IVDS and lumbar radiculopathy, finding that they appeared to be based solely on a physical examination of the Veteran without any supporting or confirmatory objective medical evidence to include NCV/EMG. 

Regarding the diagnoses made in the private DBQ, the examiner observed that the diagnosis of mild facet joint arthritis/arthropathy was confirmed by MRI imaging. He noted that these were new and separate diagnoses from the Veteran’s lumbar spine degenerative disc disease. The examiner determined that the Veteran’s arthritis was less likely than not proximately due to or the result of her diagnosed degenerative disc disease and at least as likely as not proximately due to or the result of a post-service process. The examiner reasoned that there is no anatomic or pathophysiological relationship between the two, finding that they are not the same and neither causes the other. Degenerative disc disease involves a disc as a result of degeneration while arthritis involves cartilage and bone as a result of degeneration. The examiner found that the two often have a common etiology. 

The examiner disagreed with the diagnoses of degenerative scoliosis, central canal stenosis, degenerative spondylolisthesis, and spondylolisthesis/isthmic spondylolisthesis, as they were not confirmed by imaging studies. He noted that mechanical back pain syndrome and lumbosacral sprain/strain are basically synonymous and are new and separate diagnoses from degenerative disc disease. The examiner noted that the Veteran’s mechanical back pain syndrome and lumbosacral sprain/strain were less likely than not proximately due to or the result of her diagnosed degenerative disc disease and at least as likely as not proximately due to or the result of a post-service process/overuse. The examiner reasoned that there is no anatomic or pathophysiological relationship between the two, finding that they are not the same and neither causes the other. Degenerative disc disease involves a disc as a result of degeneration while mechanical back pain syndrome and lumbosacral sprain/strain involves ligaments/muscles as a result of overuse. He further observed that, since the Veteran’s back pain with limitation of motion far outweighed the objective findings in imaging studies, it appeared that it resulted from the Veteran’s acute mechanical back pain syndrome and lumbosacral sprain/strain and was not a result of degenerative disc disease.

The Board initially observes that the Veteran has already been separately service-connected for neurological impairments related to her service-connected lumbar spine disability, including radiculopathy of the bilateral lower extremities, and the aforementioned bladder and bowel impairments. 

Prior to June 7, 2016, the evidence of record does not support a rating in excess of 20 percent for the Veteran’s lumbar spine disability. There is no competent medical evidence indicating that the Veteran’s forward flexion of the thoracolumbar spine was limited to 30 degrees or less during that time period, even with consideration of the DeLuca and Mitchell factors. It first became factually ascertainable that the Veteran’s lumbar spine disability was characterized by forward flexion of 30 degrees or less at the private DBQ in June 2016. While the private medical opinion indicates that a longitudinal view was taken in reviewing the Veteran’s file and determining that her symptomatology was underrated, he provided no objective, corroborative medical evidence demonstrating the necessary limitation of range of motion for a higher disability rating prior to the date of his examination. 

Further, while a diagnosis of IVDS was rendered, the Veteran affirmatively denied any physician prescribed bedrest in the preceding twelve months and private and VA treatment records are silent for such directives. Thus, a higher rating under the IVDS rating criteria is not warranted. Therefore, the Board finds that the preponderance of the evidence is against a finding that Veteran’s disability picture for the lumbar spine more nearly approximated the criteria for a rating in excess of 20 percent prior to June 7, 2016 under Diagnostic Code 5243. See 38 C.F.R. § 4.71a.

The Board now turns to whether a rating in excess of 40 percent is warranted for the Veteran’s lumbar spine disability from June 7, 2016 to May 14, 2018. The record does not reflect that the Veteran’s lumbar spine disability manifested symptoms or impairment more nearly approximating a schedular rating in excess of 40 percent under the General Rating Formula, including unfavorable ankylosis of the entire thoracolumbar spine. The range of motion measurements detailed above demonstrate that ankylosis was not present (i.e., the entire thoracolumbar spine was not fixed in flexion or extension). Private or VA treatment records do not show ankylosis of the spine and neither the Veteran nor or representative contend that the Veteran ever had ankylosis of the spine. 

Further, while the Veteran’s private DBQ indicated a diagnosis of IVDS with accompanying instances of physician prescribed bedrest totaling six weeks within the previous year, which would meet the criteria for a higher, 60 percent evaluation under the rating criteria for IVDS, the probative value of this determination is low, as it appears to be based solely on the Veteran’s testimony and is not corroborated in any private or VA medical treatment records, including the March 2016 VA examination performed a mere three months prior. Thus, the Board finds that a rating higher than 40 percent is not warranted.

In light of the above, the Board finds that the preponderance of the evidence is against a finding that the Veteran’s disability picture more nearly approximates a rating in excess of 20 percent prior to June 7, 2016 and in excess of 40 percent from that date for her service-connected lumbar spine disability. 

4. Entitlement to a rating in excess of 0 percent prior to June 7, 2016 and in excess of 10 percent from June 7, 2016 to May 14, 2018 for a painful cesarean section scar is denied.

By way of procedural history, the Veteran submitted a VA Form 21-0966 Intent to File on October 30, 2015. In December 2015, within a year of submission of the Intent to File, she filed a formal claim for an increased rating of her c-section scar, then rated as 0 percent disabling under Diagnostic Code 7805. The regional office issued a rating decision in April 2016, which confirmed and continued the 0 percent disability rating for the Veteran’s c-section scar. 

In September 2016, the Veteran submitted a private DBQ and nexus opinion that addressed the current severity of her c-section scar disability. She also proffered lay statements authored by her and her spouse. The Veteran then requested reconsideration of the increased rating claim for her c-section scar disability. She was subsequently awarded a 10 percent disability rating, effective June 7, 2016, the date of the DBQ, under Diagnostic Code 7804. 

As the Veteran submitted new and material evidence pertinent to her claim within a year of the April 2016 rating decision, the Board finds that the October 2015 claim is on appeal. Thus, the Board will review all evidence from one year prior to that date to determine whether a rating in excess of 0 percent is warranted prior to June 7, 2016 and whether a rating in excess of 10 percent is warranted thereafter.

Under Diagnostic Code 7804, unstable or painful scars are evaluated as follows: five or more scars that are unstable or painful (30 percent); three or four scars that are unstable or painful (20 percent); and one or two scars that are unstable or painful (10 percent). 38 C.F.R. § 4.118, Diagnostic Code 7804. Diagnostic Code 7804, Note (2) allows for an extra 10 percent rating for a single scar that is both unstable and painful. Diagnostic Code 7804, Note (1) defines an unstable scar as “one where, for any reason, there is frequent loss of covering of skin over the scar.”

The Board now turns to the evidence of record. On the Veteran’s November 2015 formal claim, she averred that her c-section scar was tender.

In March 2016, the Veteran underwent a VA examination to assess the current severity of her c-section scar. There, the examiner observed a linear c-section scar, characterized as a transverse suprapubic scar, measuring 17.4 cm by 0.2 cm. The scar was not assessed as painful or unstable. 

The Veteran proffered a lay statement authored by her spouse detailing the severity of her disability. He indicated that the Veteran’s c-section scar and complications from her past c-sections adversely affected her fertility and interfered with their sexual relationship.

The Veteran submitted a DBQ completed by a private physician in June 2016. The private physician endorsed a review of the Veteran’s claims file as provided by the Veteran, as well as the aforementioned lay statement from her spouse. He then performed a ninety-minute in-person examination. Following the physical examination, he found that the Veteran’s c-section scar presented as chronically tender, especially when touched and/or brushed by heavy clothing.

Prior to June 7, 2016, the evidence of record does not support a rating in excess of 0 percent for the Veteran’s c-section scar, as the Veteran’s scar is not located on her head, face, or neck to warrant consideration under Diagnostic Code 7800, and is not shown to cover sufficient area to warrant consideration under Diagnostic Code 7801, and Diagnostic Code 7802, and there is no objective medical evidence of pain or tenderness or any other discernible symptomatology related to it. 

From June 7, 2016 to May 14, 2018, the Board finds that a rating in excess of 10 percent for the Veteran’s painful c-section scar is not warranted. 38 C.F.R. § 4.118, Diagnostic Code 7804. A rating in excess of 10 percent is not warranted because the Veteran has one scar that is painful, a symptom fully contemplated by a 10 percent rating. There is no evidence that the scar is unstable, with frequent loss of covering of skin over the scar. See 38 C.F.R. § 4.118, Diagnostic Code 7804, Note (2).

The Board also finds that a rating in excess of 10 percent is not warranted under any other Diagnostic Code pertaining to scars, as the Veteran’s scar is not located on her head, face, or neck to warrant consideration under Diagnostic Code 7800, and is not shown to cover sufficient area to warrant consideration under Diagnostic Code 7801, and Diagnostic Code 7802. As also noted, the Veteran’s scar is not shown to have any disabling effects other than pain, which is contemplated under the 10 percent rating currently assigned under Diagnostic Code 7804. As the Veteran’s most recent code sheet still reflects a separate 0 percent rating under Diagnostic Code 7805, additional consideration under this code is not warranted. 

 

 

JENNIFER HWA

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board L. Bush

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.